THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ELÍN ROMÁN MORALES, Defendant and Appellant.

No. 13695. Argued May 10, 1949.—Decided May 27, 1949.

*Samuel R. Quiñones, Víctor Sánchez Fernández,* and *Domingo Candelario,* for appellant. *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Fernando Fornaris, Jr., Assistant Fiscal,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of Court.

Elín Román Morales was charged by the District Attorney of Bayamón with the crime of murder in the first degree for having caused the death of Harry Maldonado, with malice aforethought and with a fixed and deliberate intent to kill, by firing shots with a pistol that caused a bullet wound as a result of which Maldonado died on August 9, 1947. The case was tried by a jury who returned a verdict of guilty of murder in the first degree, and Morales was sentenced to life imprisonment.

Morales appealed to this Court and in his brief alleges that the lower court committed error (1) in permitting the district attorney to introduce evidence on the death of Eugenio Sánchez Santos, which occurred, according to him, after the incident of the death of Harry Maldonado; (2) in dismissing a motion for mistrial based on the fact that the court had admitted said evidence; and (3) that the verdict is contrary to the evidence and to the law inasmuch as neither deliberation, nor even premeditation, was proved.

The evidence presented by the prosecution disclosed that on August 9, 1947, between 9 and 10 o'clock in the

evening the defendant arrived at the America Restaurant located at 105 Dr. Veve Street in Bayamón and had some beer; that when Eugenio Sánchez Santos, owner of the establishment, asked the defendant to pay, the latter answered that he would pay later, if he felt like it; that the defendant went out and returned five minutes later and gave Sánchez a five-dollar bill to pay for the beer and that when he received the change he called Sánchez a "miser" to which the latter answered whether that was the way he paid him for the favor that he [Sánchez] had done him a week before when he took his brother out of jail; that without there being any other words the defendant struck Sánchez; that they then started "grappling" in the establishment and continued outside on the sidewalk, when defendant "threw" a knife at Sánchez which he had taken from a counter, but that the blade came off the handle which stayed in defendant's hands; that some friends intervened and separated them, whereupon the defendant fled; that after 25 or 30 minutes the defendant returned in a truck, and was seated in the front seat next to the driver; that policeman Harry Maldonado, whom Sánchez had brought after he had been attacked by the defendant, then approached the truck and told the defendant that he was under arrest, to which defendant answered, "you are not arresting me"; that defendant then opened the door and fired a shot with his pistol at Maldonado, and as the latter backed away defendant fired a second shot; that Maldonado died as a consequence of a hemorrhage from the bullet wound caused by one of the shots; that when policeman Maldonado came to the truck and said "you are under arrest" he was holding in his hands a notebook and a pen; that the defendant immediately got out of the truck with the pistol in his hands and stood at the door of the restaurant; that when José Luna Colón, an employee of Sánchez, entered the establishment, the defendant pushed him and he fell to the floor, and that when Eugenio Sánchez Santos appeared on the sidewalk, defendant fired a

shot at him, and as he fell he shot him again, returning immediately to the truck, pistol in hand, where the driver was waiting for him, fleeing in said vehicle at a high speed.

The evidence of the defendant tended to show that after an argument with the owner of the restaurant over payment for beer defendant met his brother-in-law Vicente Torres and got into the truck of the latter with the intention of leaving; that policeman Maldonado then came to the truck and rebuked him violently and tried to get him out by force in order to arrest him; that at that moment policeman Maldonado drew his revolver and that defendant, in self-defense, fired at the policeman.

The lower court did not commit error in allowing the evidence on the shots fired by defendant at Eugenio Sánchez Santos whom shortly before he had attacked with his fists and with whom he had a quarrel which ended in an attempted assault with a knife with which he armed himself in said establishment during the quarrel. Although defendant was on trial for the death of policeman Maldonado and had pleaded guilty of murder in the second degree for the death of Sánchez, yet the facts as a whole form a single transaction. The death of policeman Maldonado is so related to that of Sánchez and was perpetrated so·closely before the latter's at the time defendant was carrying out his manifest purpose of killing Sánchez with the pistol with which he was armed, that the transaction consists of a consecutive series of facts so related to each other that the acts of defendant immediately after firing at policeman Maldonado, going to the restaurant after Sánchez and firing at him without any provocation, are inseparable circumstances of the death of Maldonado and tend to establish the state of mind of the defendant and his criminal intent at the time, inasmuch as since it was his purpose—in pursuance of which he returned to the place of the occurrence armed with a pistol—to kill Sánchez, it was necessary for him to eliminate the one obstacle in his way: policeman Maldonado, who by his interven-

tion—and perhaps by his mere presence—would have defeated said purpose. When the circumstances under which two crimes are committed are, as in this case, so linked together that it is impossible to separate them because they form part of the same transaction, proof of one or both crimes is admissible against the defendant on trial for either of said crimes. *People* v. *Román*, 42 P.R.R. 620; 170 A.L.R. 306, 307; 20 Am. Jur. 289, Evidence, § 310. For the same reasons the lower court did not commit the second error assigned in refusing to grant the motion for mistrial.

▮▮▮▮ The third error was not committed either. The evidence justifies the verdict of murder in the first degree. The elements of premeditation and deliberation, essential to a conviction of murder in the first degree, may be inferred from the manner in which a deadly weapon is used or perhaps from the mere use thereof, *People* v. *Alegría*, 36 P.R.R. 355; as well as from the other circumstances and relation of the parties, and from the acts and conduct of the defendant. *People* v. *Vaiz* (1942), 55 C. A. 2d 714, 131 P. 2d 407; *People* v. *Smith*, 15 Cal. 2d 640, 104 P. 2d 510. They depend upon the circumstances of the case and the act of aiming and discharging a firearm at a person and killing him is sufficient to show premeditation and deliberation, notwithstanding the suddenness with which the act may have been committed. *People* v. *Ortiz et al.*, 18 P.R.R. 803. The law does not require a definite lapse of time for the deliberation and premeditation essential to a conviction of murder in the first degree. *People* v. *Patubo*, 9 Cal. 2d 537, 71 P. 2d 270, 113 A.L.R. 1303. They may exist and be conceived at the same instance of the commission of the attack. *Aldridge* v. *United States* (1937), 47 F. 2d 407, 60 App. D. C. 45, reversed on other grounds in 283 U. S. 308, 75 L. Ed. 1054; *Bostic* v. *United States* (1937), 94 F. 2d 636, certiorari denied in 303 U. S. 635, 82 L. Ed. 1095; *People* v. *Hashaway* (1945), 67 Cal. App. 2d 554, 155 P. 2d 101. In the case at bar, the conclusion of the jury is justified by all the circumstances

of the crime, inasmuch as it is reasonable to infer from them that when defendant returned to the place of the occurrence armed with a pistol, half an hour after his first attack on Sánchez, he was doing it with the intention of committing a second attack on the latter, and that upon being surprised by the policeman, he decided—as he did—to do away with him, thereby eliminating the obstacle which could defeat his criminal scheme against Sánchez.

Under these circumstances, the verdict of murder in the first degree shall not be disturbed on appeal.

The judgment will be affirmed.